**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **DONNA McLACHLAN,** )<br>        **Plaintiff,** )<br>                                                       )<br>**v.**                                                        )<br>                                                       )<br>**COMMISSIONER OF THE SOCIAL** )<br>**SECURITY ADMINISTRATION,** )<br>        **Defendant.** ) | **Civil Action No.<br>3:04-CV-2580-K** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This is a social security case. Plaintiff Donna McLachlan ("Plaintiff") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Defendant" or "Commissioner") who denied her claims for Disability Insurance Benefits under Title II of the Social Security Act ("DIB"). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and an Order of the Court, this case has been referred to the United States Magistrate Judge. Plaintiff's Brief in Support of Request for Judicial Review and Defendant's Brief are before the Court for consideration. The Court has reviewed the evidence of the parties in connection with the pleadings and **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

**I.   Background**[1]

    **A.   Procedural History**

Plaintiff filed her DIB application with a protective filing date of January 19, 2001. (Tr. at 56, 57-9.) After her application was denied both initially and upon reconsideration, Plaintiff, who was represented by Russell Disparti, received a hearing before Administrative Law Judge Ralph L. Wampler (the "ALJ") on March 13, 2003. (*Id*. at 314-27.) The ALJ issued an unfavorable decision

---

[1] References to the transcript of the administrative proceedings are designated as "Tr."

on June 19, 2003, finding that Plaintiff could not perform her past relevant work but that she could perform work which exists in significant numbers in the national and local economies. (*Id*. at 14-20.) The Appeals Council granted Plaintiff's request for review of the ALJ's decision and decided that Plaintiff was able to perform her past relevant work. (*Id*. at 4-8.) Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

Plaintiff alleges that the Commissioner's decision is not supported by substantial evidence and is not consistent with applicable legal standards because the Commissioner failed to articulate a legitimate basis for discounting Plaintiff's chronic pain from peripheral neuropathy and failed to re-contact her treating physician concerning her ability to work on a sustained basis.[2] (Pl.'s Br. at 6-17.) Defendant responds that the Commissioner's decision that Plaintiff was not disabled must be affirmed because the Commissioner applied the correct legal standards, and the decision is supported by substantial evidence. (Def.'s Br. at 2-13.)

### B.     Factual History

#### 1.     Plaintiff's Age, Education, Work Experience, and Insured Status

Plaintiff's date of birth is April 13, 1943. She was sixty years old, a person approaching advanced age, at the time of the hearing. Plaintiff graduated from high school and completed one year of college. She worked as a wafer tester, telemarketer, and electronics assembler. Plaintiff met the DIB status requirements on July 19, 2000, the date she claims that she became unable to work

---

[2] More specifically, Plaintiff alleges that the Commissioner (1) failed to articulate a legitimate basis for discounting her chronic pain; (2) failed to recontact her treating neurologist concerning her ability to work on a sustained basis; (3) failed to make a finding that Plaintiff could maintain employment; (4) made flawed findings with respect to Plaintiff's Residual Functional Capacity ("RFC"); (5) failed to develop the evidence with respect to the specific skills or mental demands of her work; and (6) failed to consider Plaintiff's additional non-exertional limitations with respect to her balance, concentration, and speech.

2

due to severe chronic pain from peripheral neuropathy in her feet and legs. She continued to meet the requirements through the date of the decision. She had not engaged in substantial gainful activity since July 19, 2000. (Tr. at 19, 56, 57-9, 70, 79-80, 85, 317.)

### 2. **Plaintiff's Medical Evidence**

Tom Henslee, D.P.M., examined Plaintiff on November 5, 1999, pursuant to a referral from Gregory Carlson, M.D. (Tr. at 120-22.) Dr. Henslee's diagnosis was hyperesthesia and paresthesia secondary to unknown neurological etiology with the possibility that she was taking an excessive number of vitamins. (*Id.*)

Plaintiff's treating physician, Gregory Carlson, M.D., reported that bone density tests on September 28, 1999, were normal. (Tr. at 147.) Dr. Carlson noted on November 11, 1999, that he had referred Plaintiff to Dr. Henslee who had found only frozen joints in her small toes and who had told her she needed to explore medical causes for her foot pain. (*Id.* at 154.)

The Commissioner referred Plaintiff to Charles N. Howard, Jr., M.D., for a consultative examination which took place on August 20, 2001. (Tr. at 184-189.) Dr. Howard determined that Plaintiff had a full range of motion in her shoulders, elbows, wrists, and hands and could grasp and finely manipulate with no evidence of erythema, edema, or deformity. (*Id.* at 185.) With respect to her lower extremities, Dr. Howard found a full range of motion of her hips, knees, ankles, and feet without any evidence of erythema, edema, or deformity. He noted:

> She complain[ed] of numbness in her lateral legs, but when I checked for sensation in her feet, she almost [came] off the table when I checked the lateral aspect of the foot on both sides; so there seems to be some discrepancy here.

(*Id.*) He further noted that she had full range of motion when she was in the standing position, but that she could not do a straight leg raise, either sitting or lying down. (*Id.*) She told Dr. Howard that

3

she was too unstable to do a heel-walk or a toe-walk. (*Id*.) The doctor said that she walked with a stable solid gain, but she walked very slowly and deliberately, as if she had trouble controlling her balance. She had the same gate going down the hall and when she initially went down the outside steps. (*Id*.) However, the doctor added that she came back up the steps, went into the building, went back down the steps again, and walked out to the car with a much more stable gait and without the appearance that she was losing her balance. (*Id*.) He noted that she easily entered the truck. (*Id*.) His diagnosis was that she had peripheral neuropathy of the lower extremities of unknown etiology, hypertension, and was overweight. (*Id*.)

A state agency physician completed a Psychiatric Review Technique Form after a review of the record and found Plaintiff's restriction of activities of daily living and difficulties in maintaining social functioning to be mild. (Tr. at 172.) He found that she had no difficulties in maintaining concentration, persistence, or pace, and had no repeated episodes of decompensation. (*Id*.) He concluded that she did not have a severe mental impairment. (*Id*.)

Two state agency physicians reviewed Plaintiff's medical file in connection with her Social Security claim and assessed Plaintiff's RFC at light work. (Tr. at 190-98, 199-206.)

Treating neurologist E. Sundaram, Jr., M.D., began seeing Plaintiff in February 2000, after a referral from Dr. Carlson. (Tr. at 249-69, 221-48.) Dr. Sundaram thought Plaintiff's symptoms were suggestive of possible peripheral neuropathy. (*Id*. at 269.) He examined Plaintiff monthly from March through November of 2000. (*Id*. at 254-67.) He also examined her in January and March of 2001, and in March and May of 2002. (*Id*. at 249-53.) The "Objective Neurological Exam" on each of these dates states that "there is no change from prior exam." Dr. Sundaram referred Plaintiff to Dr. S. Appel, who also diagnosed her with mild sensory neuropathy with no

4

definite cause. (Tr. at 251.) On January 16, 2002, Dr. Sundaram issued an opinion that Plaintiff was totally disabled. (Tr. at 221-23.)

### 3. **Plaintiff's Hearing**

Plaintiff's hearing convened on March 13, 2003. (Tr. at 314-27.) Mr. Disparti represented her at the hearing. (*Id.*) The witnesses were Plaintiff and Dr. Carry Bartlow, a Vocational Expert ("VE"). (*Id.*)

Plaintiff testified that at her last job, she worked twelve hours a day as a wafer processor. (Tr. at 318.) This job lasted about a year. (*Id.*) Additionally, she stated that she had worked briefly as a telemarketer and an electronics assembler. (*Id.*) She stated that she quit working because of pain in her feet and legs. (*Id.*) She claimed that although her job usually required some standing, she was allowed to perform her job sitting down. (*Id.* at 319.) She stated that she took medication daily for pain, but she did not feel as if it helped her. (*Id.*) She testified that she also took medication for depression and that her depression was under control. (*Id.* at 321.)

She related that she took care of her own personal needs, dressing, laundry, some of the cooking, and some of the grocery shopping. (Tr. at 321-22.) She said that she had trouble sleeping at night and took Trazodone, which helped her get to sleep. (*Id.* at 323.) She said that she did not sleep at all during the day and usually spent about eight hours a day in her recliner. (*Id.* at 339-40.)

The record shows that Plaintiff's recreational activities and hobbies included reading, watching television, and crocheting. (Tr. at 102.) Her social activities included visiting friends or relatives. (*Id.* at 103.) She was able to drive locally. (*Id.*)

The ALJ questioned the VE about Plaintiff's past relevant work. (Tr. at 324.) The VE testified that Plaintiff's jobs as a wafer processor and telemarketer were sedentary and semiskilled.

5

(*Id.*)  He told the ALJ that her job as an electronics assembler, as she performed it, was sedentary and semi-skilled.  (*Id.* at 325.)

### 4. <u>The ALJ's Findings</u>

On June 19, 2003, the ALJ issued an unfavorable decision on Plaintiff's application for DIB.  (Tr. at 14-20.)  In relevant part, the ALJ found that Plaintiff had a severe impairment of peripheral neuropathy in her feet and legs, but that her impairment did not meet or equal the criteria of any of the listed impairments described in 20 C.F.R. Pt. 404, Supt. P., App. 1 (the "Listings").  (*Id.* at 19.)  The ALJ considered whether Plaintiff's pain was disabling.  (*Id.* at 18.)  He found that there was no evidence of any muscle atrophy, reduced joint motion, muscle spasm, or sensory and motor disruption.  (*Id.*)  He noted that extensive testing by a neurologist had not revealed why Plaintiff should have been experiencing the pain.  (*Id.*)  The ALJ found that she retained the RFC to lift no more than ten pounds at a time, that she was able to occasionally lift or carry articles like docket files, ledgers, and small tools, and that she could walk and stand no more than a total of two hours out of an eight-hour workday.  (*Id.*)  The ALJ concluded that Plaintiff was capable of performing a full range of sedentary work.  (*Id.*)  He concluded that Plaintiff could not perform her past work, but that she had the residual functional capacity to perform a significant number of jobs existing in the local and national economy.[3]  (*Id.* at 19.)  He thus concluded that Plaintiff had not been disabled within the meaning of the Act at any time through the date of his decision.  (*Id.*)

---

[3] The ALJ found that Plaintiff could not perform her past relevant work (which included work as a wafer tester or processor, sedentary and semi-skilled), but that she had transferrable skills from her past relevant work and was able to perform sedentary, semiskilled work, such as wafer tester, with 450 jobs existing in the region and 42,000 nationally.

**5.**     **The Appeals Council's Decision**

Plaintiff appealed the ALJ's decision to the Appeals Council, and it granted review on July 9, 2004. (Tr. at 5, 9-11.) The Appeals Council affirmed the ALJ's findings under the first three sequential steps of the analysis, but found that Plaintiff was able to perform her past relevant work as a wafer processor, telemarketer, or electronics assembler, jobs that were sedentary and semi-skilled. (*Id*. at 5-6.) The Appeals Council concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of its decision. (*Id*. at 6.)

**II.**     **Legal Standards**

To be entitled to social security benefits, Plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry in determining disability:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work she has done in the past, a finding of "not disabled" must be made.

7

>   5.   If an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). In this case the ALJ's determination ended at the fourth step.

   The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to (1) whether the decision to deny benefits was supported by substantial evidence and (2) whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g) (West Supp. 1999). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. The Court now turns to the merits of the appeal.

**III**.    **Analysis**

   **A.    Plaintiff's Claim that the Commissioner Failed to Articulate a Legitimate Basis for Finding that Her Pain was Not Disabling**

Plaintiff contends the Commissioner's decision is not supported by substantial evidence and is not consistent with applicable legal standards because neither the ALJ nor the Appeals Council articulated a legitimate basis for discounting Plaintiff's chronic pain. (Pl.'s Br. at 6.)

"[T]he ALJ must consider subjective evidence of pain testified to by claimant and corroborated by others who have observed him." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981). Moreover, an ALJ's "[f]ailure to indicate the credibility choices made and the basis for those choices in resolving the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints requires reversal and remand [of the ALJ's decision]." *Id*. However, a claimant's subjective description of pain or other symptoms may not, without more, be conclusive evidence of disability. *See* 42 U.S.C. § 423(d)(5)(A). Rather, medical signs and findings must show a medical impairment that results from abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which would lead the ALJ to conclude that the individual is disabled. *Id*. "At a minimum, objective medical evidence must demonstrate the existence of a condition that could reasonably be expected to produce the level of pain or other symptoms alleged." *Anthony*, 954 F.2d at 296.

In this case, the ALJ specifically considered "whether or not the claimant has a disabling impairment due to pain, as required by Social Security Ruling 96-7p and *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987)."[4] (Tr. at 18.) He noted that "there is no evidence of any muscle atrophy,

---

[4] The hearing was held in Oklahoma. Accordingly, the ALJ relied upon Tenth Circuit precedent. The precedent he relied upon is in accord with precedent in this Circuit.

9

reduced joint motion, muscle spasm, or sensory and motor disruption." (*Id.*) He further explained that the neurologist's extensive testing did not reveal why Petitioner should be experiencing such pain. (*Id.*) He found Plaintiff's subjective complaints of pain to be credible only to the extent that they reduced her RFC to sedentary labor. (*Id.* at 19.)

The Appeals Council considered Plaintiff's statements concerning pain in accordance with Social Security Ruling 96-7p and adopted the ALJ's conclusions. (*Id.* at 6.) The Appeals Council further found that the subjective complaints "are not fully credible in light of the claimant's own description of her activities[5] and discrepancies between the claimant's assertions and information contained in the documentary reports.[6] (*Id.*)

In *Scharlow,* the ALJ failed to make *any* findings of credibility; however, the subsequent case of *Little v. Schweiker* interprets *Scharlow* as requiring the ALJ "to specifically address the credibility" of the claimant's corroborated testimony of subjective pain. *Scharlow*, 655 F.2d at 649; *Little v. Schweiker*, 555 F. Supp. 541, 547 (N.D. Tex. 1982). This Court determines that the Commissioner complied with *Scharlow* and *Little* because the ALJ and Appeals Council "specifically address[ed] the credibility" of Plaintiff's testimony and indicated "the credibility choices made and the basis for those choices." *Scharlow*, 655 F.2d at 649; *Little*, 555 F. Supp. at

---

[5] Plaintiff lived with her husband and son. (Tr. at 321-22.) She did her own personal care and dressing, laundry, some of the cooking, and some of the grocery shopping. (*Id.*) She stayed awake all day, usually spending about eight hours a day in her recliner. (*Id.* at 339-40.) Her recreational activities and hobbies included reading, six hours of watching television, and crocheting. (*Id.* at 102.) Her social activities included visiting friends or relatives. (*Id.* at 103.) She was able to drive locally. (*Id.*)

[6] For example, the consultative examiner, Dr. Howard, noted a discrepancy between the way that Plaintiff walked when she knew she was being observed and the way she walked and easily entered her truck when she did not realize anyone was watching her. (Tr. at 18.)

547. The Commissioner's finding of a lack of credibility with respect to Plaintiff's allegations that her pain was disabling also conforms to other Fifth Circuit precedent. *See Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (affirming the ALJ's credibility determination because, in part, Plaintiff's search for employment did not support Plaintiff's allegations of "severe, uncontrollable illness and restriction of function for light work"). *See also Jones v. Heckler*, 702 F.2d 616, 621-22 (5th Cir. 1983) (holding that it is within the ALJ's discretion to determine the disabling nature of pain); *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986) (affording considerable judicial deference to the ALJ's findings regarding the debilitating effect of the subjective complaint).

This Court is not free to reweigh the evidence, retry the issues, or substitute its own judgment for that of the ALJ. *Greenspan*, 38 F.3d at 236. "The decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.").

After reviewing the record to determine whether substantial evidence is present, the Court finds that substantial evidence supports the Commissioner's decision, and that the Commissioner applied the correct legal standard in determining that Plaintiff's pain was not disabling.

**B.     Plaintiff's Claims That the Commissioner was Required to Recontact Dr. Sundaram Regarding Plaintiff's Ability to Work on a Sustained Basis and to Make a Specific Finding that Plaintiff Could "Maintain Employment"**

Plaintiff contends that the ALJ was required to recontact Dr. Sundaram, the treating neurologist who rendered an opinion that Plaintiff was "totally disabled" and "unable to work." (Pl.'s Br. at 12-14.) She urges the record contains "a crucial evidentiary gap" because the ALJ did

11

not obtain additional evidence from the treating physician regarding her ability to work on a sustained basis or arrange a consultative examination. (*Id.*)

Significantly, an opinion that a claimant is disabled or unable to work is an opinion on the legal issue that is reserved for the Commissioner, and accordingly, such an opinion by a physician is never entitled to "controlling weight." *See* 20 C.F.R. § 404.1527(e). *See also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (explaining that "some opinions by physicians are not medical opinions, and as such have no 'special significance' in the ALJ's determination" (citing 20 C.F.R. § 404.1527(e) & (e)(3)) and that "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work'" (citing 20 C.F.R. § 404.1527(e)(1))). Accordingly, the ALJ must consider all medical opinions in determining the disability status of a benefits claimant. 20 C.F.R. § 404.1527(b). However, an opinion on the ultimate issue, such as the claimant's disability status under the regulations, is reserved exclusively to the ALJ. *See* 20 C.F.R. § 404.1527(e)(1).

A treating physician will be recontacted when the evidence is inadequate for the Commissioner to determine whether the claimant is disabled. 20 C.F.R. § 404.1512(e). Additionally, an ALJ needs to contact a treating source if the evidence does not support the treating source's opinion on an issue reserved to the Commissioner and the adjudicator cannot determine the basis of the opinion. SSR 96-5p. Dr. Sundaram's opinion is not ambiguous. It is unsupported by the medical evidence in the record, including his own objective tests which showed only mild sensory neuropathy and unremarkable sensory and motor examinations. (Tr. at 6, 7, 251.) The Commissioner was not required to recontact Dr. Sundaram.

Plaintiff's argument that the Commissioner should have referred her for a consultative

12

medical examination is meritless. The Commissioner referred Plaintiff to Dr. Howard for a consultative examination. (Tr. at 6, 18, 184-89.) A second consultative examination was not warranted because the ALJ and the Appeals Council did not need additional medical evidence and clarification from Dr. Sudaram or any other treating physician.

Plaintiff's claim that the ALJ was required to make a specific finding that Plaintiff can "maintain employment" is also without merit. The ALJ necessarily considers whether the claimant will have the RFC to work full time on a regular and continuing basis when he makes the RFC determination. The ALJ need not make a specific finding that a claimant can maintain employment where, as in this case, her severe impairments are not of a sporadic nature. *See Frank,* 326 F.3d at 619 (holding that a specific finding that a claimant can maintain employment is required only if, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms).

    C.    **Plaintiff's Claims that the Commissioner Made Flawed Findings with Respect to Plaintiff's RFC; Failed to Develop the Evidence with Respect to the Specific Skills or Mental Demands of Her Work; and Failed to Consider Plaintiff's Additional Non-Exertional Limitations with Respect to Her Balance, Concentration, and Speech**

Plaintiff contends that the record contains a crucial evidentiary gap that casts into doubt the existence of substantial evidence to support the Commissioner's decision denying Plaintiff's DIB claim. (Pl.'s Br. at 12.) An administrative law judge has a duty to fully and fairly develop the facts relative to a claim for disability benefits. *See Brock v. Chater,* 84 F.3d 726, 728 (5th Cir. 1996); *Kane v. Heckler,* 731 F.2d 1216, 1219 (5th Cir. 1984). This Court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure. *See Brock,* 84 F.3d at 728; *Kane,* 731 F.2d at 1220. To establish

13

prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result." *Kane,* 731 F.2d at 1220.

First, Plaintiff claims that the non-examining state agency physician's assessments of Plaintiff's RFC were made before Dr. Sundaram's report of January 2002 in which he concluded that Plaintiff was totally disabled. (Pl.'s Br. at 12-13.) As the Court noted previously, the Appeals Council properly discounted Dr. Sundaram's wholly conclusory opinion because it was unsupported by the objective medical evidence in the record which showed only mild sensory neuropathy and unremarkable sensory and motor examinations. (Tr. at 6, 7, 251.) The administrative law judge is required to consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians or psychologists. SSR 96-6p. Furthermore, an ALJ "may not ignore these opinions and must explain the weight given to the opinions in his decision." *Id*. The Appeals Council noted that at the initial and reconsideration determinations, the State agency medical consultants assessed a light RFC capacity. (Tr. at 6.) The Appeals Council properly considered these findings to be expert medical opinions. (*Id*.) The ALJ acknowledged that Plaintiff may experience symptoms related to the neuropathy and found that, as a result, she had the RFC to do only sedentary, as opposed to light, medium, or heavy work. (*Id*. at 18.) The Appeals Council adopted the ALJ's findings or conclusions regarding the Plaintiff's ability to perform a full range of sedentary work. (*Id*.) Plaintiff has not shown that the RFC findings were flawed. Remand is not required because substantial evidence supports the Appeals Council's findings, and the Appeals Council applied the correct legal standard in making this determination. Further, Plaintiff has not demonstrated that she could and would have adduced evidence that might have altered the result.

14

Next, Plaintiff contends remand is required because the record contains no comparison of the physical or mental demands of her past work as required by *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994). (Pl.'s Br. at 15.) A claimant has the burden of proving an inability to do her past relevant work. *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988). In deciding whether a claimant has the RFC to perform her past work, the Commissioner considers whether (1) she can perform the work as she actually performed it in the past, or (2) if she is capable of performing the job as is ordinarily required by employers throughout the national economy. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

In this case, the ALJ called upon the expertise of a VE. (Tr. at 324-26.) The value of a VE is that he is familiar with the specific requirements of a particular occupation. *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986). This includes the working conditions and the attributes and skills needed for a particular job. (*Id.*) A VE is able to compare all the unique requirements of a specified job with a claimant's severe impairments to reach a reasoned conclusion whether the claimant can perform a specific job. *Id*. The VE in this case testified that Plaintiff's past work as a wafer processor, telemarketer, and electronics assembler was semi-skilled, sedentary work, based upon Plaintiff's description of how she performed these jobs in the past. (Tr. at 6, 324-35.) The Appeals Council considered the mental and physical demands of Plaintiff's past relevant work, as explained by the VE, in determining that Plaintiff could perform her past relevant work. Plaintiff failed to meet her burden to prove that she could not perform her past work, and she was properly found not disabled. *See Greenspan*, 38 F.3d at 236. Substantial evidence supports the Appeals Council's decision at Step Four. Moreover, Plaintiff has not shown that she suffered prejudice.

Finally, Plaintiff contends that the Commissioner failed to consider Dr. Sundaram's opinion

15

that Plaintiff's had non-exertional limitations with respect to her balance, concentration, and speech. (Pl.'s Br. at 16.) The Appeals Council rejected Dr. Sundaram's opinion as conclusory and not supported by objective findings. (Tr. at 6.) Additionally, the Appeals Council noted the consultative examiner, Dr. Howard, found Plaintiff's sensory and motor examination unremarkable. (*Id.*) Substantial evidence supports the Commissioner's decision. Further, Plaintiff has not shown any prejudice.

## IV.    Recommendation

For the foregoing reasons, the Court **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

Signed, August 30, 2005.

                                                PAUL D. STICKNEY
                                                UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE